UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AMBER BROWNING, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED, § § § § | | |
| PLAINTIFF § § | | |
| v. § § | | CA NO. 3:17-cv-2910 |
| DALLAS BASKETBALL LIMITED, § § § § | | |
| DEFENDANT § | | JURY DEMANDED |

## PLAINTIFF'S ORIGINAL COLLECTIVE ACTION COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW, Plaintiff Amber Browning ("Plaintiff" or "Browning") on behalf of herself and all others similarly situated and files this Original Collective Action Complaint against Dallas Basketball Limited ("Defendant") and in support thereof would show as follows:

### I.   PRELIMINARY STATEMENT

1.1   This is a collective action for unpaid minimum wages brought pursuant to the Fair Labor Standards Act ("FLSA"). Defendant owns and operates the Dallas Mavericks professional basketball team. Defendant also owns and operates the Dallas Mavericks Dancers, the dance squad or cheerleaders for the Dallas Mavericks. Browning was employed by Defendant as a Dallas Mavericks Dancer from the 2013-2014 season through the 2016-2017 season.

1.2   Browning, on behalf of herself and all others similarly situated employed by Defendant as Dallas Mavericks Dancers, brings this collective action to recover unpaid minimum wage compensation, liquidated damages, attorney's fees, litigation costs, costs of court, and pre-

judgment and post-judgment interest under the provisions of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq*. ("FLSA").

1.3     For at least three years prior to the filing of this Collective Action Complaint, Defendant willfully committed widespread violations of the FLSA by failing to pay its dancers minimum wage for all hours worked.

1.4     This collective action consists of current and former Dallas Mavericks Dancers who worked for Defendant in the three years preceding the filing of this suit who were not paid minimum wage for all hours worked.

1.5     Plaintiff requests a jury trial.

## II.     JURISDICTION AND VENUE

2.1     The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this civil action arises under the Constitution, laws, or treaties of the United States; specifically, the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq*. ("FLSA").  Jurisdiction is further conferred on this Court by 29 U.S.C. § 216(b) and by the provisions of 28 U.S.C. § 1337.

2.2     The Court has personal jurisdiction over Dallas Basketball Limited because this entity conducts business in Texas and has entered into relationships with Browning in Texas, and committed actions in Texas that give rise to this cause of action.

2.3     Venue is proper in the Northern District of Texas, Dallas Division, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

## III.     PARTIES

**A.     Plaintiff**

3.1     Plaintiff Amber Browning is an individual residing in this judicial district.  Her notice of

consent is attached hereto as Exhibit A.

**B.      Defendant**

3.2      Dallas Basketball Limited is a domestic limited partnership formed and existing under the laws of the State of Texas and maintains and operates its principal office in Dallas, Texas.

3.3      Dallas Basketball Limited was an employer of Browning as defined by 29 U.S.C. §203(d).

3.4      Dallas Basketball Limited can be served with process by serving its registered agent for service of process, Capital Corporate Services, Inc., at 2016 E. 9th Street, Suite 1300, Austin, Texas 78701.

3.5      Dallas Basketball Limited determined the wages to be paid to Browning and those similarly situated.

3.6      Dallas Basketball Limited determined the work to be performed by Browning and those similarly situated and monitored and directed the work of Browning and those similarly situated on a regular basis.

3.7      Dallas Basketball Limited determined the locations where Browning and those similarly situated would work.

3.8      Dallas Basketball Limited determined the hours of Browning and those similarly situated.

3.9      Dallas Basketball Limited determined the conditions of employment of Browning and those similarly situated.

3.10     Dallas Basketball Limited maintained employment records on Browning and those similarly situated.

3.11     Dallas Basketball Limited possessed and, in fact, exercised the power to hire, fire and discipline Browning and those similarly situated.

## IV.  FLSA COVERAGE

4.1     For purposes of this action, the "relevant period" is defined as such period commencing on the date that is three years prior to the filing of Browning's Original Collective Action Complaint, and continuing thereafter.

4.2     At all relevant times, Defendant had gross operating revenue in excess of $500,000.00.

4.3     At all relevant times, Defendant has been, and continues to be, an "employer" engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203.

4.4     At all relevant times, Defendant employed "employees", including Browning and each of the collective class Plaintiffs, within the meaning of the FLSA, 29 U.S.C. § 203.

4.5     At all relevant times, Defendant employed two or more persons in interstate commerce.

4.6     At all relevant times, Defendant has been an "enterprise" engaged in commerce as defined in 29 U.S.C. § 203.

4.7     At all relevant times, Browning and those similarly situated were individually engaged in interstate commerce or in the production of goods for commerce while performing their job duties for Defendant.

4.8     At all relevant times, Defendant has been subject to the requirements of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.

## V.  FACTUAL ALLEGATIONS

5.1     Defendant often paid Browning, as well as all others similarly situated, less than the minimum hourly wage required by the Fair Labor Standards Act.  In fact, on many occasions, Browning and the other Dallas Mavericks Dancers were paid absolutely nothing.  For example:

5.2    For each home game during the season, Browning and other dancers worked approximately five to six hours.  During the 2014-2015 NBA season, whefn Defendant incorrectly classified its dancers as independent contractors, Defendant paid Browning and the other dancers for some games but not for others.

5.3    Browning and the other dancers were required to attend multiple mandatory practices each week, and were required to review dance routines prior to each practice.  During the 2014-2015 NBA season, Browning and the other dancers were paid nothing for participating in practices.  Browning and the other dancers have never been compensated for reviewing routines prior to practice, although Defendant was aware Browning and the other dancers had to spend such time reviewing their dance routines.

5.4    After the 2014-2015 NBA season, Browning complained about not being paid for all games in which the dancers participated.  Defendant subsequently re-classified its dancers as employees and began paying them $7.50 an hour for practices, and $60 for most games, although Defendant still did not pay all dancers for all games worked.  During practices, the dancers' manager began "recording" their time, although they were not always allowed to see the amount of time their manager recorded for each of them, or if they were, they were required to sign off on their "time sheets" immediately, without an opportunity to take the timesheets home or in any meaningful way review them.

5.5    If a mandatory appearance or media related event was scheduled before a game, Browning and the other dancers were required to arrive in full costume, makeup and hair, a process which took one to two hours, time for which they were not paid.

5.6    In addition to paid appearances, Browning and the other dancers were required to attend multiple unpaid appearances.  They were required to appear for each such event in full costume,

hair and makeup, which again required one to two hours of preparation. Dancers were also required to attend unpaid photoshoots, some of which took four hours, while others lasted a full day.

5.7     Browning and other dancers were also subject to discipline if they did not spend what Defendant considered to be a sufficient amount of time using social media. For example, dancers were instructed to have a minimum of two posts on Twitter and Instagram each day, and three posts on Twitter and Instagram on game day. In order to satisfy this requirement, Browning would have to browse through recent online photographer albums, NBA affiliate websites, upcoming events on the Dallas Mavericks website, the Dallas Mavericks Instagram/Twitter feeds, and multiple emails to obtain information that could be used to post about promotional events, themes, community events, away game notices, and media coverage. All time Browning and the other dancers spent fulfilling their social media requirements was unpaid.

5.8     Browning also spent unpaid time each week messaging with other dancers to plan early practice arrival, to assist with choreography review or to address questions, problems or concerns from the other dancers, including rookies.

5.9     Each summer, Browning and the other dancers were required to participate in audition prep classes. In addition to teaching some of these classes, Browning assisted in leading and coordinating a substantial number of these prep classes. At each class, the dancers, including Browning, had to appear in full hair and makeup. Browning was not paid for time spent preparing for, teaching or managing these classes. The other dancers were not paid for time spent attending these classes.

5.10    For two years each July, Browning helped run and lead tryouts, where she was required to appear in full costume, hair and makeup. She did not get paid for any time spent preparing for, running or leading tryouts.

## VI.    COLLECTIVE ACTION ALLEGATIONS

6.1    Other employees have been victimized by the pattern, practice, and policy of Defendant that is in violation of the FLSA. Browning is aware that the illegal practices and policies of Defendant have been imposed on other Dallas Mavericks Dancers.

6.2    Browning brings this lawsuit on behalf of herself and all other persons who worked for Defendant as Dallas Mavericks Dancers at any time three years prior to the filing of Browning's Original Collective Action Complaint, to the entry of judgment in this lawsuit ("Collective Class").

6.3    Defendant did not pay Browning and the Collective Class for all hours worked each week.

6.4    Browning and those similarly situated shared common job duties. Therefore, Browning's experiences are typical of the experiences of other similarly situated employees.

6.5    Defendant's operations with respect to Browning and the Collective Class and wages paid to Browning and the Collective Class are substantially similar, if not identical.

6.6    Defendant's pattern of failing to pay minimum wage compensation as required by the FLSA results from Defendant's general application of policies and practices, and does not depend on the personal circumstances of Browning and the Collective Class.

6.7    Although the issue of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

6.8    Browning files this case as an "opt-in" collective action as specifically allowed by 29 U.S.C. § 216(b). Browning brings these claims for relief for violations of the FLSA as a collective action pursuant to 29 U.S.C. § 216(b). Browning brings these claims on her behalf and on behalf

of those similarly situated who have not been fully compensated for all work performed, time spent, and activities conducted for the benefit of Defendant.

6.9     Browning requests that Defendant identify all prospective members of the Collective Class in order that proper notice of their right to consent to participation in this collective action may be distributed, including their names, dates of employment, job titles, last known addresses, email addresses and mobile telephone numbers.

6.10    Browning seeks to represent those members of the above-described group who, after appropriate notice of their ability to opt into this action, have provided consent in writing to be represented by Browning's counsel as required by 29 U.S.C. § 216(b).

6.11    Those individuals who choose to opt in will be listed on subsequent pleadings and copies of the written consents will be incorporated by reference.

6.12    Browning will fairly and adequately represent and protect the interests of those similarly situated who opt into this action.

## VII.   CAUSE OF ACTION

### Failure to Pay Minimum Wage

7.1     Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully set forth herein.

7.2     Defendant has violated 29 U.S.C. § 201 *et seq*. by failing to pay Browning and all others similarly situated minimum wage for all hours worked during their employment.

7.3     No excuse, legal justification or exemption excuses Defendant's failure to pay Browning and all others similarly situated minimum wage for all hours worked during their employment.

7.4     In further violation of the FLSA, Defendants have failed to maintain accurate employee pay records, including the number of hours worked per workweek by Browning and those similarly situated.

7.5     Defendant has failed to make a good faith effort to comply with the FLSA.  Instead, Defendant knowingly, willfully, or with reckless disregard carried out its illegal pattern or practice regarding minimum wage compensation.

7.6     Browning and those similarly situated seek all unpaid minimum wage compensation, and an additional equal amount as liquidated damages, as well as reasonable attorney's fees, costs, and litigation expenses, including expert witness fees, as provided by 29 U.S.C. § 216(b), along with pre- and post judgment interest at the highest rate allowable by law.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Amber Browning and all those similarly situated to her who have or will opt into this action, respectfully pray that this Honorable Court follow the certification procedures previously established pursuant to § 216 of the Fair Labor Standards Act and conditionally certify a collective action as described herein pending the identification of and receipt of consent from prospective members of the collective action, and that subsequent thereto Browning and all others similarly situated recover the following from Defendant:

    a.    unpaid minimum wages for all hours worked each workweek;

    b.    liquidated damages in an amount equal to unpaid minimum wages as allowed by the FLSA;

    c.    reasonable attorney's fees, costs and expenses of this action, including expert witness costs, as provided by the FLSA;

    d.    pre-judgment and post-judgment interest at the highest rates allowed by law; and

e. such other and further relief, at law or in equity, as this Honorable Court deems necessary.

Respectfully submitted,

/s/  Douglas B. Welmaker
Douglas B. Welmaker
Attorney-in-Charge
State Bar No. 00788641
DUNHAM & JONES, P.C.
1800 Guadalupe Street
Austin, Texas 78701
Tel: (512) 777-7777
Fax: (512) 340-4051
E-Mail: doug@dunhamlaw.com

Scotty Jones
State Bar No. 00796848
DUNHAM & JONES, P.C.
1110 E. Weatherford Street
Fort Worth, TX 76102
Tel: (817) 339-1185
Fax: (817) 810-0050
E-mail: sjones@dunhamlaw.com

ATTORNEYS FOR PLAINTIFF